[L. A. No. 22977.   In Bank.   Oct. 22, 1954.]

HEBER A. SKAGGS, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Morris Lavine for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and John J. Tully, Jr., Assistant City Attorneys, for Defendants and Appellants.

SCHAUER, J.—From a judgment awarding plaintiff the recovery of certain sums found to be due him as pension payments from the city and declaring his right to receive the pension in the future, both parties appeal. Defendant attacks the judgment in its entirety, while plaintiff appeals from the portion thereof which denies him recovery of pension payments for a period of some five years preceding the date from which the court determined the past due payments should be computed. We have concluded that plaintiff should prevail with respect to both appeals.

The facts are not disputed and findings were waived by the parties. On April 1, 1925, plaintiff became a police officer of the city of Los Angeles, and on April 1, 1945, he completed 20 years of aggregate service in the police department and became eligible to retire upon a service pension. During his period of service to the city, 4 per cent of his salary was deducted and paid into the police pension fund as required by section 186½ of the Los Angeles city charter.

Some three months later, on July 4, 1945, he was arrested on suspicion of having committed bribery on the previous day, and on July 5, 1945, the chief of police relieved plaintiff from duty and filed against him charges of conduct unbecoming an officer.[1]  The charges, set forth in five counts, concerned plaintiff's conduct in connection with charges then pending against one Kelly Petillo.  On July 9, 1945, plaintiff filed an application for a hearing before a board of rights on the charges against him, and on the same day applied to the board of pension commissioners for retirement upon a service pension.

In April, 1946, plaintiff was convicted of bribery in the superior court, based upon the same matters as those set out in the charges which the chief of police had filed against him. Plaintiff appealed.

Some three months later, on July 23, 1946, the board of rights, following a hearing and with the conviction in the criminal case before it, found plaintiff guilty of three of the counts filed by the chief of police and as penalty ordered that plaintiff be removed from his position in the police department.  The following day the chief of police executed the order of removal, declaring it effective as of July 5, 1945 (the day the chief had relieved plaintiff from duty and filed the charges against him).[2]

In May, 1947, the District Court of Appeal reversed plaintiff's superior court conviction on the bribery charges (*People v. Skaggs* (1947), 80 Cal.App.2d 83 [181 P.2d 390]) and on August 12, 1947, he was acquitted upon a new trial.  On September 8, 1947, he filed with the chief of police a request to be reheard on the matter of his removal.  The chief denied the request on September 30, 1947, and on January 6, 1948, the District Court of Appeal denied plaintiff a writ of mandate to compel his reinstatement as a police officer and the payment of salary from the date of his removal.  (*Skaggs* v. *Horrall* (1948), 83 Cal.App.2d 424 [188 P.2d 774].)  The following month, on February 24, 1948, the board of pension commissioners denied plaintiff's application for retirement on service pension.  In November, 1948, plaintiff again asked the

[1]Provisions concerning such charges and their consideration by a board of rights are found in section 202 of the Los Angeles city charter. (Stats. 1935, p. 2347.)

[2]Subdivision (14) of section 202 of the Los Angeles city charter provides that ''such removal shall relate back to and be effective as of the date of such relief from duty pending hearing before and decision by the Board of Rights.''

chief of police for a rehearing upon his removal and in December, 1948, the chief again denied the request.

On February 16, 1951, plaintiff filed with the Los Angeles city clerk and with the board of pension commissioners a claim for some $8,200 as pension payments commencing as of July 9, 1945 (the date he had applied to the board for retirement on pension), with interest thereon, and to have monthly pension payments in sums fixed by the city charter continue during plaintiff's life. Four days later (on February 20, 1951), before the claim was acted upon, plaintiff filed this action for recovery of past accruing pension payments and to establish his right to future payments. The court concluded that he was entitled to the pension, but that by reason of the claim provisions found in section 376 of the city charter his right to recover past installments was limited to the period commencing six months prior to February 16, 1951 (the date he filed the claim with the city clerk and the board of pension commissioners). Judgment was entered accordingly.

As grounds requiring reversal of the judgment defendant first urges the bar of the three-year statute of limitations found in subdivision 1 of section 338 (see also section 312) of the Code of Civil Procedure, which applies to "An action upon a liability created by statute, other than a penalty or forfeiture." ■ Although more than five and one-half years elapsed between the date the chief of police relieved plaintiff from duty and the filing of this action, it was expressly held in *Dillon* v. *Board of Pension Commrs.* (1941), 18 Cal.2d 427, 431 [116 P.2d 37, 136 A.L.R. 800], that "The running of the statute of limitations . . . is tolled during the period of the board's [Board of Pension Commissioners of Los Angeles] deliberations, that is, from the time the claim [pension application] is filed until the board's decision is rendered." ■ Here, as already stated, plaintiff applied to the pension board for retirement on July 9, 1945, but the board did not act upon plaintiff's application until February 24, 1948. Since plaintiff filed this action on February 20, 1951, it was within the three-year period, exclusive of the period of the board's deliberations. ■ There is no merit in defendant's suggestion that plaintiff's "misbehavior" prevented the pension board from acting during the period (from July 9, 1945, to July 24, 1946) between the date he applied for a pension and the date the chief of police executed the order removing him from office, and that therefore the

limitations statute was not tolled during such period. *Mac-Intyre v. Retirement Board of San Francisco* (1941), 42 Cal.App.2d 734, 737 [109 P.2d 962], relied upon by defendant, did not involve the statute of limitations, and, in addition, the statement in the opinion that ''Appellants have not permitted respondents [the board] 'to act,' '' referred to the mandamus action instituted by appellants and not to charges of misconduct filed against them in the police department.

Defendant next contends that the trial court erred in receiving in evidence and considering the provisions of Los Angeles city ordinance 67778.[3]   The pension provisions applicable to members of the police department are found in article XVII (i. e., §§ 180-189) of the city charter. Section 181 as it read at the time plaintiff applied for retirement (Stats. 1926, p. 2008 et seq.) provided, so far as here material, ''that after twenty years' aggregate service, on request of such member [of the police department] who shall have become a member . . . prior to the taking effect of this amendment, or by the board for the good of the department, such member shall be retired and paid in equal monthly installments . . . a limited pension as follows: . . .''   Plaintiff became a member of the department in 1925, ''prior to the taking effect of this amendment'' in 1927.

Despite the mandate of the quoted charter provision that ''after twenty years' aggregate service, on request of such member . . . such member *shall be retired* and paid . . . a limited pension'' (italics added), defendant suggests that the provisions of section 3 of ordinance 67778 are ''incom-

[3]Section 2 of ordinance 67778 makes it the duty of the board of pension commissioners to sign and issue a certificate to each member of the fire or police department who has served therein the aggregate number of years entitling him to service retirement.

Section 3 of the ordinance provides that ''Upon the completion of the period of service mentioned in Section 181 of the Charter of the City of Los Angeles, entitling such member to retire under its provisions, such member shall be entitled to retire at any time thereafter from active service from such department in accordance with the provisions of said Section 181 hereinabove referred to, which right shall be a fully matured, absolute, vested property right, reserved for such member as a constituted and granted right to retire; and no event or occurrence of whatsoever kind or nature, whether prior, pending or subsequent, shall ever operate as a forfeiture or divestiture thereof; provided, however, that if such member shall continue in the service of said department, he shall nevertheless be entitled to all the benefits of the additional percentage as provided for by said Section 181 hereinafter referred to, in computing the aggregate number of years of service in such department up to the time of his actual retirement.''

petent, irrelevant and immaterial in that, despite the language therein contained, they are ineffectual for any purpose for they cannot change, limit or modify'' the pension provisions of the charter. (See *Essick* v. *City of Los Angeles* (1950), 34 Cal.2d 614, 621 [213 P.2d 492]; *Montgomery* v. *Board of Administration* (1939), 34 Cal.App.2d 514, 520 [93 P.2d 1046, 94 P.2d 610].) Although it was held in both the Essick and the Montgomery cases that an ordinance which violates a charter limitation is ineffectual, it is not shown that the ordinance here in question does constitute such a violation since there appears to be no charter provision which precludes the city from providing by ordinance for confirmation of the fact that its employe has completed the number of years of service required to entitle him to retirement on a pension. The provision of charter section 180 that ''The Board of Pension Commissioners shall administer the fire and police pension system of the city . . .'' would hardly seem to establish such a limitation.

Moreover, the declarations of section 3 of the ordinance that upon completion of the period of service specified by the charter entitling a member of the police department to retire under its provisions, the right to retire at any time thereafter ''shall be a fully matured, absolute, vested property right, reserved for such member as a constituted and granted right to retire; and no event . . . shall ever operate as a forfeiture or divestiture thereof,'' rather than being inconsistent with, appear to be merely confirmatory of, the mandatory charter provisions found in section 181 (quoted hereinabove), and in accord with established principles of law applicable to pensions.

In *Dryden* v. *Board of Pension Commrs.* (1936), 6 Cal.2d 575, 578-579 [59 P.2d 104], it is stated that ''The deceased was a member of the police department for approximately fourteen years before his death, during the entire period of which he paid his required 4 per cent of each salary check received. A pension based upon such facts is not a gratuity. It is a periodical allowance of money granted by the city in consideration of services rendered or of loss or injury sustained, *and* payments actually made for that purpose. It has been clearly held that the pension provisions of the city charter are an integral portion of the contemplated compensation set forth in the contract of employment between the city and a member of the police department, and are an indispensable part of that contract, and that the right to

a pension becomes a vested one upon acceptance of employment by an applicant. [Citations.]'' In *Terry* v. *City of Berkeley* (1953), 41 Cal.2d 698, 703 [263 P.2d 833], this court declared that ''The pension payments are in effect deferred compensation to which the pensioner becomes entitled upon the fulfillment of the terms of the contract which may not be changed to his detriment by subsequent amendment. [Citations.]'' (See also *Kern* v. *City of Long Beach* (1947), 29 Cal.2d 848 [179 P.2d 799].)

More recently, in *Wallace* v. *City of Fresno* (1954), 42 Cal.2d 180, 183, 185 [265 P.2d 844], we considered an attempted deprivation of pension rights under an amendment adopted some six years after plaintiff became a member of the police department and 22 years before he retired on pension, which directed that if a retired person was convicted of a felony his pension should terminate. Again the principles were reaffirmed that ''A public employee who serves under [established] pension provisions . . . acquires a vested contractual right to a substantial pension. This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent [unreasonable] changes in the law. [Citation.] . . . [P]ension payments are deferred compensation to which a pensioner becomes entitled upon performing all services required under the contract . . .'' It was held that the amendment constituted an unreasonable impairment of plaintiff's contract with the city and could not operate to deprive him of his pension rights upon his conviction of a felony some three years after he retired.

Here, in view of the mandatory provision (§ 181) under which plaintiff served, that ''after twenty years' aggregate service, on request of such member . . . such member shall be retired'' on pension, it is apparent that the ordinance to which defendants object added nothing to the rights which accrued to plaintiff at the time he completed his 20 years' service on April 1, 1945, and that his subsequent removal from office on charges of conduct unbecoming an officer could not operate to forfeit his previously earned pension. Particularly is this true where, as here, the attempted forfeiture is not pursuant to any charter provision or specific legislation of any nature whatsoever but is merely a refusal of the pension board to grant plaintiff's application for retirement on pension. In *MacIntyre* v. *Retirement Board of*

*San Francisco* (1941), *supra*, 42 Cal.App.2d 734, relied upon by defendants as authority for refusal to grant plaintiff's pension, it does not appear that the court was considering charter provisions analogous to those now involved; furthermore, the court there declared that it was dealing with a claim for a pension the right to which had not become vested; consequently the holding of that case is not controlling or persuasive here.

Moreover, the fact that the order removing plaintiff related back to July 5, 1945—the date he was relieved from duty and four days before he applied to the pension board for retirement on pension—does not constitute under the charter a ground for depriving him of vested pension rights which had fully matured some three months earlier. As mentioned hereinabove in footnote 1, the provisions concerning the filing of police department charges against a police officer, their consideration by a board of rights, and the penalties which may be imposed in case the accused is found guilty, are set forth in section 202 of the city charter. Such penalties are therein expressly stated to be (subd. (12)), "either suspension for a definite period not exceeding six (6) months with total loss of pay, and with or without reprimand; or reprimand without further penalty; or of removal from office or position . . ." and nowhere therein have we discovered nor has there been cited to us a provision authorizing the further drastic penalty of forfeiture of vested pension rights which had previously fully matured. On the contrary, it is declared in subdivision (18) of section 202 that "This section shall not be construed to in any way affect any other rights any officer or employee may have to pursue or assert any and all other legal rights or remedies in relation to his office or position *or to the compensations attached thereto . . ."* (Italics added.) (See also *Holt* v. *Board of Police & Fire Commrs.* (1948), 86 Cal.App.2d 714, 716-719 [196 P.2d 94].) As already mentioned, pension rights are a part of the compensation attached to plaintiff's office.

With respect to plaintiff's appeal from that portion of the judgment which limits his recovery of past due pension payments to the period commencing six months prior to February 16, 1951 (the date he filed the claim with the city clerk and the board of pension commissioners for some $8,200 as pension installments commencing as of the date he applied for pension on July 9, 1945), it appears that the trial court was of the view that such a limitation was compelled by

the claim provisions found in sections 363 and 376[4] of the city charter. It has been held, however, in both *Dryden* v. *Board of Pension Commrs.* (1936), *supra*, 6 Cal.2d 575, 582, and *Dillon* v. *Board of Pension Commrs.* (1941), *supra*, 18 Cal.2d 427, that an application or petition to the board of pension commissioners for a pension constitutes the claim referred to in section 376. This holding accords with and is supported by the provisions of section 363 that the presentation of "any such claim [for money or damages against the city, or any officer, board or department thereof] . . . to the board . . . authorized by this charter to incur or pay the expenditure or alleged indebtedness or liability represented thereby, shall constitute a compliance with the provisions of Section 376 as to the presentation of a claim prior to suit or action thereon." In the Dillon case it was further pointed out (p. 432 of 18 Cal.2d) that "The charter provision does not, of course, require a claimant to make a succession of claims every six months in order to keep alive his right pending court action, but requires the filing of only one claim with the board." Thus, since plaintiff complied with section 376 by filing his application with the pension board, he is entitled to pension payments commencing as of the date (July 9, 1945) that he requested retirement.

For the reasons above stated, that portion of the judgment which limits plaintiff's recovery of past due pension installments is reversed with directions to the trial court to recompute the past due installments in accordance with the views herein expressed, and in all other respects the judgment is affirmed. Plaintiff shall recover costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

---

[4]Section 376: "No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose, and all other claims or demands shall be presented within six (6) months after the last item of the account or claim accrued. . . ."